Called this morning is Joseph H. Lewis Jr. v. Univ. of PA Good morning, Your Honor. May I have permission to reserve three minutes for rebuttal? Also, I have two pages of the record of 600 pages that I have blown up that I would like to show the panel here today. Let me have permission. No problem with that. It's you know, for some of us, it takes us back to the days of the district court and being able to look at demonstrative evidence. OK. For what it's worth. Now, I remember the days when bringing a blow up of something was that was high tech. Yeah. Right. Yeah. But you would go, wow, look at that. Not so much. You were back in the days of black and white television. That is true. That's true. Thank you, Your Honors. May it please the court. Timothy Creech representing the appellant who was a decorated Marine and decorated police officer who had dedicated years of service to the University of Pennsylvania. He also happens to be a black man who suffers from a skin condition that made it impossible for him to look like all of the other officers and to comply with the appearance standards as they existed at the university. When the chief of police discovered this, she specifically she admitted she ordered them because she saw him with. Excuse me. Let me stop you right there. Since you've raised at the outset the skin condition, which figures prominently in this litigation. The district court made a determination that she would not rule this as a matter of law, whether or not that condition was a disability. Am I correct? Yes. Send the question to a jury. Do you have a position with respect to whether or not she was correct or incorrect? Your Honor, I believe that under the amended ADA, this is a disability as a matter of law. And the reasons for that are the plain language of the statute, which before were not were not very clear. And I think there was a case out of the D.C. circuit that said that it was not. But it actually specifically noted that was the Kennedy versus Gray case. So what what has what has interfered with or limited our 2004 Williams decision in which we said that the question of whether an individual substantially limited major life activity is a question of fact. Your Honor, it's just what the specifics of this disability are. It affects normal skin growth. And that's that's in the actual language of the amended statute that did not exist at that time. And if you look at the regulations that were promulgated after that, it specifically mentions skin and appearance. And also, I would note that the ADA definitions of disability specifically say that you're not supposed to regard whether or not that disability can be overcome by a reasonable accommodation. Right. But when you look at our how it how it is, how it or case 2009 took a case where we set out what are the requirements for disability? And the chief judge Smith just alluded to it. Right. What's the major life activity that's affected by pseudophiliculitis? Not being able to be a clean shaven officer, not being able to go out there and appear in public. As as the accommodation request said, if you do not grant me this accommodation, I'm going to have infections on my face that if I go out and arrest somebody, I could get risk of getting infection. I can get hepatitis or AIDS or something like that for coming into contact with a suspect. It's a little showing your face in public is a pretty important thing. But is the question here no beard, no beard or no beard? I mean, I thought the question here was you can have the beard, but you have to give us a doctor's note. And if I understood your papers, you you you didn't make the doctor's note the focus of your claim. I think I'd understand your claim better if the claim was it's harassment for me to have to every 60 days provide a note on what is a permanent condition. But as I understood your claim, that wasn't what you articulate. Oh, yes, it absolutely was, Your Honor. The whole and that was the claim that was dismissed. Remember, that was a claim that we were not allowed to present to the jury. This, you know, the majority of this appeal is about the summary judgment order where the judge specifically said, as a matter of law, it's reasonable for the for the University of Pennsylvania to require them to go back to the doctors every 60 days. And my and the other one of the other orders in limine specifically barred my doctor from testifying that it's a chronic condition. So I don't see any reason why you would have to get a renewal every six. Well, that may be. But is there anything in the record that I mean, I'm looking at it from from, you know, just reading the record. The original note said this is a seven day thing. Did you did your client ever ask for to be exempted from this 60 day requirement? Yes, Your Honor. That was in Exhibit 43. Exhibit 43 of the record are 151A. The accommodation request was to indefinitely not have to shave the face or neck and also that it was permanent. And then, Your Honor. Your Honor. No, no, no. Stop, though. I'm so sorry. Please answer Judge Chigueras' question. Right. You didn't ask that you be excused. You stated you and I'm willing to concede anyone who can read the record knows that I'm willing to concede. You said, yeah, it's a permanent condition. But you didn't say, excuse me, from the 60 day note requirement, which is. Your Honor, this is the summary judgment phase. I think this court should be guided by Taylor versus Phoenixville, a case that the district court actually cited. It talks about the informal interactive process. Another claim that was dismissed by the district court on summary judgment and was not presented to the jury. The jury was told that this was reasonable as a matter of law to interpret his request at Exhibit 43 as a request to be cloistered from the public, like he's going to shave and have an infected skin. I think we understand that the interactive process. But if you're if your client didn't ask to be exempt, is it hard for you, Penn, to respond to it? No, no. And then I would ask your honors to look at Exhibit 46, the email from Patrice Miller, which specifically says that he has to be exempted from the shaving requirement. If they didn't. Your Honor, this may be a great argument for the jury. I don't think it's a great argument, but they could make this argument to the jury. If they want to say to the jury, we engaged in this informal interactive process consistent with Taylor versus Phoenixville, and we didn't understand that he really wanted to be excused from submitting a note every 60 days. They can make that argument to the jury. That's the informal interactive process. They did. That's not what they did. This was dismissed. It's summary judgment. We never got to argue this to the jury. The jury heard that the accommodation denial was reasonable as a matter of law. And they heard that he was constructed. He was not constructively discharged as a matter of law. Let's let's let's return to the constructive discharge issue here, because it's a major component of this appeal. End of your case. Set forth for us, please. What what you believe are the strongest objective facts that support a determination of constructive discharge of this police officer? Thank thank you, Your Honor. I would point to the Mandel case and I would just ask you about. Yes. Yes. Let me let me go through right here. This is the first disciplinary hearing with all respect. I can't see that. It's 212 in the record. If I could read it to your honor here. So this is after the actual charge of lying was dismissed on the page before this because the sergeant admitted that he told him to shave or go home. So that one charge of lying about being harassed for his beard was actually not sustained because it was admitted that he experienced this. And then here's so here's so the point is, OK, that charge is going to be sustained. And this is Maureen Rush, the chief of police. But regardless, the length of the beard is and was too long. Not sure why you're sitting here pointing fingers. And I apologize. I'm going to be yelling at the court. But I was told during trial by the by the judge that this was the appropriate tone of voice that I'm seeing arrogance. I want to see remorse and understanding. Do you want to be a police officer at Penn? That is a threat of threat of discharge or so a jury could find to be. That's one. That's February 24. Counsel, I appreciate you're going through this. I read this pretty carefully. This is rather forward. I think your argument is this shows that they wanted to get rid of the guy. His impression leaving was we don't want you anymore. I viewed some of this stuff is kind of forward looking. You know, we have high expectations for you. This can't happen again. Even when you just read was sort of a, you know, come on, man, you got to you got to come around. Can I look at the next one? Yeah, go ahead. OK, so here it is. You're going to get warm and fuzzy with the directives. You're going to get a written warning. Two hundred seventy days. You're getting off of your special shift. You're suffering a subject to reduce pay or benefits involuntarily transferred to a less desirable position. Altered job responsibilities are all in the case. He his his his salary went down. Well, he lost the opportunity to earn overtime. He testified about that because being on the shift that worked Monday to Friday, he could get weekend overtime assignments that he wouldn't be eligible for if he had to work over the weekend. And that, of course, is an adverse employment determination. But again, how does it support constructive discharge? Do you want to go back? Look at your beard. This is the chief again, by the way. Yeah. Look at your beard today. Looks like a goatee too long. Back to middle and on 10 back to the middle 10 shift instead of your special shift. We'll be in touch to make sure it's the beard is consistent. So your honors, a reasonable jury could differ as to what that means. I think it's very clear what that means. It's a threat. Take off that beard. Come back without that beard. I don't want to deal with this. By the way, look what happened to the other officers. The two other officers both testified that they were intimidated out of keeping the beard. Just just just to clarify, for purposes of my memory, it wasn't a matter of beard or no beard, was it? I mean, it was a matter of a trimmed beard of a particular length. No, no. He had we have photographs in the record, your honor, showing he always maintained one quarter inch of facial hair. That wasn't what my question. Oh, my question was that you went to what the requirement, the employment requirement was. They didn't say you cannot have a beard at all. Right. Well, we believe that they may not have said it, but they certainly intimidated the officers into doing that. Getting rid of the beard entirely. Two other officers, both black men, both had facial hair, both had this medical condition, the same medical condition, both stopped requesting the waivers for two reasons. They both said it was too difficult to go back every 60 days, which we weren't allowed to present a trial. That was actually barred and eliminated. Weren't allowed to say that it was too burdensome to go back every 60 days. And that kind of intimidated them and harassed them into stopping to request the waiver. And the other thing is that they also said that they felt pressure from their commanding officers not to request this waiver. I don't I don't understand a couple of things on the document that I don't have it in front of me where. Officer Lewis. Specified why he was requesting this and so forth. He didn't mention the 60 days here throughout the record, as I understood it. The question was your beard has to be a quarter of an inch. And there was some back and forth about whether it is or it isn't. But the chief asked you about the constructive discharge. So here's here's my question to you. As you focus on the constructive discharge claim, are you melding the hostile work environment claim? And and and, you know, bootstrap in the legal context is not usually a good term, but it seems like you're taking a hostile work environment facts and saying that's what amounted to the constructive discharge, which is fine if that's where you are. I just want to understand it because it seems to me you haven't mentioned your best fact for constructive discharge, which is she sent her home and said I read it a time. Your Honor, I apologize. I was getting there. I thought this really easy. The reason why this was so important to me to bring forward was that it was not forget about it in the opinion. Yes. To answer your question, Your Honor. The Mandel case and the Colwell case specifically look at these things as it might be. You have to show more. You have hostility and then you have constructive discharge. And then there's a number of factors. There's no bright line test. You're absolute. Forget about the cases. Just for a second. I can't believe I said that. But what is your best? I'll remind you of that. I'm sure. What is your best fact for constructive discharge? Your absolute best. Like take this to the bank. Well, OK, the there's there's several. There's so many. Oh, my heavens. Just one. So many. Your best. Yeah, I start. I started at this inquiry by asked by my asking you to give us your strongest objective facts. Or you've gone through these now. Judge Greenaway has narrowed the inquiry and asked you what's your best. What I'm tired of this. Take his gun. Deactivating his I.D. That was on March 11th, 2016. OK, great. OK, let's start there. Right. Fabulous. Thank you for doing that. So we know that in the next week he's he's he's still being paid. He goes home. Presumably he's still being paid, as I understand it. And then the following week, he says, I have a new job of law. No, your honor. That's that's really. First of all, a reasonable jury. Remember, we're at summary judgment. I'm a really happy. That's tell me. Tell me if what a reasonable jury could disagree with that. I didn't characterize it. I said that happened. Did it? No, it did not. It did not. He was not paid. He was not paid. He knew that if he felt that if he had tried to come back to work, he was just going to fire as soon as he had gotten back. He had also testified. That's the case. Why didn't they fire him before? How reasonable is that? Because he thought they were going to do it on the next particular occasion that they had. They had ratcheted up this pressure. Remember the moment that the chief of police says research this. That's January 11th or so, 2016, until the day that she says I'm tired of this take is done. Gun, which is 60 days later, March 11th or so, 2016. In that 60 days, an officer who had an exemplary record was assigned to a special shift, couldn't do anything right. And they found every possible reason they threw the book at him. And a jury could look at all of these facts and come to the conclusion what the district judge did. The district judge should not have made these predeterminations for the jury. These are the province of the jury. Thank you. We'll have you back on rebuttal. Thank you. Green's may it please the court. My name is Leslie Greenspan and I represent the appellee, the trustees of the University of Pennsylvania. The district court, through the Honorable Gene Prater, granted partial summary judgment. And in an abundance of caution and in an effort to give Mr. Lewis every benefit of the doubt, sent the remaining claims to the jury. And we all know what happened with respect to the verdict in trial. Yes, Your Honor. And as you know, the jury found no race discrimination, no disability discrimination. Discharge claim was was tossed at summary judgment before trial. Yes. Now, it seems that there are genuine disputes of material fact that would that would appear to preclude summary judgment. For instance, Officer Lewis tells us about the superintendent yelling at him, taking his gun, having him marched out of the of the station house or whatever. There were a lot of facts alluded to by your adversary. Isn't there more than enough there with regard to the constructive discharge claim that that should have gone to the jury as well? Respectfully, no, Your Honor. The district court judge made a very clear point in her summary judgment order that, yes, there was enough to go to a jury for hostile work environment. But as this court is well aware, the burden for hostile work environment is much lower than that for constructive discharge. And therefore, you can see from the jury's verdict, it confirms what the district court did. It confirms if the jury found no hostile work environment, which is the lower burden, then certainly there was no constructive discharge, which was the higher burden. And her honor looked at the. Now, wait a minute. You're asking us to take a jury verdict that was subsequent to the summary judgment determination as some basis for concluding that the summary judgment ruling was wrong. Well, what I'm suggesting to your honor is that the jury's verdict confirms that what the district court did was right as a matter of as a threshold matter. It sounds like a trial, a trial argument. Well, you know, this one really worked well, so we got to assume that this one would have worked well as well. That's a particular issue. Respectfully, as your honor pointed out, the facts underlying the hostile work environment are the very same facts underlying the constructive discharge claim and the record of the trial, which was concluded. Let me ask. Let me ask you this. Let's let's return to Judge Greenway's permission, a legal question of a case. Ask me about the case. This is a case that was cited in the blue brief, but you haven't cited it. It's a 1993 case in the Third Circuit. Klaus, I assume you read it since it was cited by your adversary. But we identified a number of factors commonly used to support a claim of constructive discharge. And these, and here they are. One, being threatened with discharge. Two, being urged to resign or retire. Three, being demoted. Four, a reduction in pay or benefits. Five, being involuntarily transferred to a less desirable position. Six, having job responsibilities altered. And seven, being given unsatisfactory job evaluations. Doesn't that sound like enough to require the district court to have sent this constructive discharge claim to the jury? No, Your Honor. And as pointed out by Judge Chigaris, and I apologize if I'm mispronouncing that. My wife's still getting it wrong. We've been married for 30 years. Yeah, but that's intentional. Those these statements that have been heavily relied upon here by counsel, those are forward looking statements. Anything about his position, for instance, about his position being changed, his shift being changed. That was forward looking. And that's something that, in fact, wasn't scheduled to occur. I think it is forward looking by definition, isn't it? Arguably, yes, Your Honor. However, there was no change in his position. There was no change. And that's an undisputed fact. But what about, I mean, for instance, your adversary made a point of saying, hey, he couldn't get overtime anymore. He had taken off this really desirable duty and now he can't make overtime. If I may, Your Honor, that is a piece of evidence that was presented to the jury in connection with the hostile work. But we're talking about summary judgment here. Yes. And that's that's exactly my point. The jury said no hostile work environment. But that's not the point. Right. The point isn't whether the jury concluded something. And now we look back. The point is whether there are genuine disputes. And this is what the district court said, given the number. This is page 15, I guess, of the of the January 2018 opinion. Given the number of incidents and the short time frame in which they occurred, a reasonable jury could conclude that Mr. Lewis suffered pervasive discriminatory conduct. Now, you know, as we as we look at this, the question is, is there something for a jury to look at? Sure. As we think of constructive discharge, we can say that the standard is higher. But as as Chief Judge Smith just pointed out, when you look at those seven factors and you think of them in the summary judgment context, it's it's difficult to say that that shouldn't get to a jury that very well. I am not disputing that that is the law and that that is what governed. What I am saying is that when Mr. Lewis presented this argument at summary judgment, the focus of his argument was strictly on his subjective feelings at the time. And what the district court said was his subjective feelings. That's not that's true of any question that requires application of objective test. Right. I mean, of course, subjective subjective reactions may not, as an evidentiary matter, be irrelevant for purposes of proving what's necessary for an objective test. But it's not going to carry the day. I don't understand, though, what the import of of that argument is for purposes of whether or not the district court got it wrong here. Are you arguing some kind of waiver or forfeiture given what you say his focus was before the district court? It's not a waiver argument, your honor. It's simply that Mr. Lewis had to make the argument. He had to say a reasonable person would have felt this way. And based on some of the facts that your honors pointed out during my opponent's argument, such as the fact that he continued to be on paid leave, such as the fact that he was approved for FMLA leave, the fact that he felt the need 11 days after he voluntarily left to send a letter back to Penn saying, I don't intend to come back. OK, well, I need to go back and take a look at the district court record. But I what I really need for for an understanding of your position, because you you have invoked it several times, is the significance with import for our purposes today of the jury's verdict on hostile work environment. I'm not linking that because you've obviously not explicitly invoked some kind of you had said there was issue preclusion or some kind of collateral estoppel. So I don't see how we use that today for any purpose. Let me please try to do a better job explaining it. Well, there are cases that hold that. I mean, you bring it up as a factual matter. Has that ever been an argument raised or dealt with by court? Well, there are certainly cases which, of course, I don't have at my fingertips right now, which which talk about the fact that constructive discharge is a much higher burden than that for hostile work environment. And my point is, how about just the procedural matter of of taking a fact of a finding by the jury and interposing it backwards in time to say it wouldn't have mattered anyway? Now, I do not have a case on that point. OK, but what? But my point is, it's an interesting argument that this very same facts that were underlying that hostile work environment claim that did go to the jury. The very same facts relied on here by counsel. The jury heard it all for five days. They considered all of it. They looked at these notes extensively. They heard Chief Rush testify about one deposition, about another deposition, about the notes. They heard it up, down and sideways. And they still said no hostile work environment. And that bar is here. Low, lower, at least. The reason that Judge Zagara has brought this up is because it's an it is, in fact, I think, a novel argument. Not sure it's particularly persuasive, but it is not. Let me change the the course of our discussion for a moment. If if a pseudophilic delirious Barbie is a permanent condition, couldn't the requirement for doctor's notes every 60 days be deemed to be harassment? I mean, there is a determination in there in among the documents that it's a permanent condition. So if it's a permanent condition, what possible purpose could there be for Mr. Lewis to find the time to go to a doctor to get a note? Your Honor, the requirement for the medical certification every 60 days, that is part of Directive 45. Directive 45 is entitled Appearance Standards, Uniforms and Equipment. Directive 45 has a built in reasonable accommodation. And that is you are required as an officer to be clean shaven unless there is a medical reason not to shave. You know, my mother told me that I was a good reader. So help me get past this. If it's a permanent condition, what's the reason for having a note every 60 days? Well, as part it's almost a quid pro quo, if you will, Your Honor, a quid pro quo between Penn and between the officer. So the officer wants this reasonable accommodation. What's the purpose of having it's a permanent condition. It's not going to change. Well, let me highlight for the factory, for Your Honor, that for the first six years of Mr. Lewis's time at the Penn police, he was clean shaven. So this was not an issue. I don't know when it came up. That's not in the record. Yes, Your Honor, I believe it is. He worked there from 2009 to 2016, seven years. He has a medical doctor, unless you're questioning the medical doctor. And I mean, your smile has to be undermined because the judge sent it to the jury as a disability. So I mean, it's it's permanent. What's the purpose of the note? I don't get it. The purpose is to determine whether he continues to need this accommodation. Whether he continues to have a permanent condition. No, whether he continues to require the accommodation he's requested. And let's be clear about what accommodation he did request. He requested not to shave. He did not request a waiver of the 60 day requirement. And to now, Your Honor, I didn't ask you that. All I asked is, could it be deemed harassment if it's a permanent condition? That's what I asked you. I do not believe it could be. That's the question. Great. Getting back to what accommodation did he actually request? Let me before you get into that factual issue. Let me ask you another legal question based on this and the statute with respect to the 60 day certificate. If I recall, the district court concluded that these certificates are not medical examinations or inquiries. Am I correct? Yes. All right. And in fact, the EEOC's guidance says that a medical inquiry includes, quote, asking an employee to provide medical documentation regarding his or her disability. So how do you square the court's ruling with that EEOC guidance? Your Honor, the specific statute to which I believe you're referring, 42 U.S.C. section one, two, one, one, two. Well, one, twelve. Yes. That deals in the concept of employers not being able to pry into whether an employee has a disability. That's a very different inquiry from what we're looking at here. Here we're dealing with he's requested a reasonable accommodation. And as part of us agreeing to give him that reasonable accommodation, we've said we've got to bring in a note to show that you continue to have that need. Now, what he if he needs to go and get a certification, no one has suggested he needs to go in for any kind of examination or testing or anything else. It is simply come back with a medical certification. And if it is, in fact, a permanent condition, his doctor can write a note and it can as often as he goes in. And we see this all the time where patients go in for medical paperwork and documentation. It doesn't necessarily require an examination. It's not prohibited by the ADA. Your Honors, I see I'm running short on time. Is there a particular issue you would like me to address? Up to you. Use your time as you wish. Your Honors, if I may, I'll briefly address the issue of that your honors seem very interested in, which was. Of course, I lost my train of thought. Happens to me all the time. If I may, just a moment, of course, indulgence. It was the issue of whether the district court should have decided as a matter of law that PFP was a disability. My point to this court is that it does not matter the judge. I assume that's your position because you've not crossed the people on that on that issue. That's absolutely right, Your Honor. And the jury found in the verdict sheet, which is page five hundred of the record, that he did not have a disability and was not discriminated against one or the other. And reading all reasonable inferences in favor of the jury's verdict, as we must after that verdict is renter rendered, that is a fair reading of their verdict. Thank you very much, Your Honors. Thank you very much. And we'll have Mr. Creech back to rebuttal. Your Honor, may I begin with the question about whether the verdict can be used to affect in any way the summary judgment. And I think the answer is absolutely not. It would run afoul of the standard of this, which I neglected to ask. Was that issue touched on at all in the briefing? I don't recall. Yes. Yes, Your Honor. I did. Well, first of all, in the standard of review that I think that's the reason why briefs require that you do that. This record exercises de novo review of a district court's grant of partial summary judgment. I went out and found Morgan v. Covington Township from 2011, which was a partial summary judgment appeal. An appeal of partial summary judgment is looked at exactly the same way as an appeal of total summary judgment. The finding of the jury and then the other cases that we cited, I think, and some of this may have had to do with that sir reply brief. I'm sorry. Maybe I missed that. So you're saying what the jury decided has no bearing whatsoever. None, Your Honor. Absolutely. And besides, I think if you look at the cases that talk about what effect a judge's ruling has on a jury, being told that there was nothing unreasonable about denying this accommodation. He wasn't denied any ADA accommodation in violation of any law. They reasonably engaged in this interactive process. The jury is given that from the judge at one. And two, he just decided to say, I don't feel like working here anymore on his own. And we're not able to use the power of the threat with discharge, the less desirable assignment, all these things that happened to them to let the jury say, you know, so what is he doing? He complaining about a disability that he didn't have or that I think it's two separate ideas. Yeah. Just just one quick cleanup. Would you concede that punitive damages and the attorney misconduct should just be set aside and really aren't in play here? The it would appear fairly clear that there's no intentional malice or reckless disregard here. Those two issues should really be off the table. Your Honor. No, because let's look at the. All right. How about taking them one at a time? Okay. Anyway, beat me to the punch. I actually thought about asking that as a housekeeping matter. At the very start of this oral argument, please give us again objective facts or rather, you know, those those powerful facts that ought to raise the intensity of what happened here to the level of something deserving. Yes. Thank you, Your Honor. Okay. These notes here that we're looking at, we didn't have them in the original discovery period. I took the deposition of Chief Rush and May of 2017 before these notes were produced. She said, I don't recall personally looking at his beard. I don't remember if it was out of compliance anyway. That's at Exhibit 72, Record 259A. Then after these notes were exposed and she could no longer plausibly deny knowing anything about this beard or thinking about this beard in any way. She testifies again after discovery was reopened because these documents were produced late. Record had to be augmented. On Exhibit 73 at 269A on September 12, 2017, the Chief says, I saw it. The first person I ran into the next day, I told to research this. And it wasn't about researching it. It was to find out why he's walking around with a goatee. She also said, I don't know whether it was an inch or a quarter of an inch. I don't know. I just didn't like seeing it hanging down. She said, when it came to the discipline about, did you notice anything about the beard? She said, of course I did. That's the whole reason he was there. How does that go beyond or somehow rise above the severity of the facts giving rise to the claims themselves? Are they outrageous? Are they egregious? We don't have these notes. She denies. I don't personally recall looking at his beard at all. You think they're egregious? That's pretty outrageous. Let me jump to the other issue Judge Greenaway asked you. What more could this court do than the district court did with respect to the interchange, the exchange between Attorney Tucker and the witness? The court addressed it, right? Well, not if the case is remanded. The court addressed it, right? Yes, Your Honor. Yes. However, if the case is remanded, I'm going to have a big problem getting that witness to come back. And I wouldn't blame you for being afraid to come back. You're a chop. You like working at chop. I understand the underlying concern, but I question that we would even have the jurisdiction to reach. Gentlemen, anything?